UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUBY HENDERSON,<br><br>　　　　Plaintiff,<br><br>　　　v.<br><br>UNITED STATES OF AMERICA, et al.,<br><br>　　　　Defendants. | Case No. CV 19-479 DSF (JCx)<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW AFTER COURT TRIAL** |

# **INTRODUCTION**

On January 22, 2019, Ruby Henderson filed a Complaint against the United States and the United States Air Force (USAF)[1] under the Federal Tort Claims Act, 28 U.S.C. § 2671, et seq. Dkt. 1 (Compl.).[2] Henderson asserts a single claim for negligence arising from a trip-and-fall incident at the Los Angeles Air Force Base Commissary on July 14, 2016. Henderson claims she tripped on a "buckle" in the floor mats at the exit from the Commissary.

The United States argued in its opening statement and closing argument that in order to prevail, Henderson was required to establish that (1) the buckle in the floor mats constituted an unreasonably dangerous condition, (2) tripping on the buckle was the cause of her fall, and (3) the fall caused injuries. Because the Court finds Henderson has not met her burden of proving by a preponderance of the evidence that she fell because she tripped on the buckle, the Court need not address the other issues in detail and finds in favor of the United States.

The matter having come on for trial without a jury on September 15, 2020, the parties having stipulated to a trial by videoconference, dkt. 51, the Court having heard live testimony and reviewed submitted declarations and exhibits, and having considered the evidence of record, the credibility of witnesses, and the oral and written arguments of counsel, and having ruled on objections,[3] the Court makes the following findings of fact and conclusions of law in accordance with Rule 52(a) of the Federal Rules of Civil Procedure.[4]

---

[1] On April 25, 2019, Henderson voluntarily dismissed the USAF. Dkt. 11.

[2] On August 25, 2016, Henderson submitted a federal tort claim to the United States Air Force Claims Servicing Center. The Department of the Air Force denied the claim on August 2, 2018. Dkt. 49-1 (Final PTC Order), Admitted Fact 10.

[3] To the extent the Court cites testimony, it has overruled any objections to the testimony. The Court has not relied on the disputed exhibits.

[4] Any finding of fact deemed to be a conclusion of law is incorporated into the conclusions of law. Any conclusion of law deemed to be a finding of fact is incorporated into the findings of fact.

*(footnote cont'd on next page)*

# FINDINGS OF FACT

1. The Commissary is operated by the Defense Commissary Agency, which is an agency of the United States Department of Defense.[5]

2. Sean Jacoby was the Grocery manager of the Commissary from December 2015 until June 2017. The Commissary is a non-profit grocery store that sells groceries and other items to veterans and their families at cost. Dkt. 58-1 (Sean Jacoby Trial Decl. (Jacoby Decl.)) ¶¶ 2-3.

3. The Commissary has three exits: a north exit, a west exit, and an east exit. Jacoby Decl. ¶ 8. There is a partition between the cash registers at the Commissary and the north exit. Id. In order to leave the Commissary through the north exit, customers must walk around the partition. Id.

4. It is not physically possible to walk from the cash registers straight out the north exit to the Commissary. Dkt. 76 (Trial Tr.) (Jacoby) at 109:25-110:4, Ex. 12.

5. Because of the partition separating the cash registers from the north exit, customers exiting the Commissary through the north exit could not approach the floor mats located at the north exit straight on. Jacoby Decl. ¶ 8. Instead, because customers must walk around the partition before exiting, any customer leaving the Commissary through the north exit would approach the floor mats near the exit at an angle. Jacoby Decl. ¶ 8; Trial Tr. (Prisk) at 93:15-94:1.

6. Henderson and her husband Milton have been going to the Commissary to shop for groceries approximately once per month for several years.[6] Henderson had been to the Commissary many times before and it was her regular grocery store. Trial Tr. (R. Henderson) at 23:16-24:1.

---

Where the Court declined to adopt a fact submitted by a party, the Court found the fact was either unsupported, unnecessary, or irrelevant to its determination.

[5] This fact was stipulated to by the parties. See Final PTC Order, Admitted Fact 1.

[6] This fact was stipulated to by the parties. Final PTC Order, Admitted Fact 2.

7. Henderson and her husband Milton were at the Commissary on July 14, 2016.[7]

8. After completing their grocery shopping, Henderson and her husband paid for their groceries and began to exit the Commissary through the north exit. Dkt. 58-2 (Brandon Prisk Trial Decl. (Prisk Decl.)) ¶ 6.

9. They were assisted with their groceries by Brandon Prisk, a volunteer bagger at the Commissary. Prisk Decl. ¶ 5. Prisk would assist customers with their groceries as they exited the store. Id. ¶ 2.

10. As Prisk was assisting Henderson and her husband, he noticed that Henderson was "shuffling" as she walked, meaning that Henderson was not picking her feet up very much as she walked. Prisk Decl. ¶ 7. As Henderson, her husband, and Prisk approached the Commissary's north exit, Henderson was on Prisk's left. Trial Tr. (Prisk) at 94:20-22.

11. As Henderson, her husband, and Prisk approached the Commissary's north exit, Henderson tripped. Dkt. 54 (Ruby Henderson Decl. in Lieu of Live Direct Testimony (R. Henderson Decl.)) ¶ 2.

12. Henderson does not remember where on the floor mats she was when she fell. Trial Tr. (R. Henderson) at 24:17-19.

13. Henderson also does not remember how far she was from the door to the Commissary exit when she fell, Trial Tr. (R. Henderson) at 24:20-22, though she was close enough to the exit that she hit her left shoulder on the automated exit door, id. at 23-25; R. Henderson Decl. ¶ 4; dkt. 55 (Milton Henderson Decl. in Lieu of Live Direct Testimony (M. Henderson Decl.)) ¶ 4.

14. Prisk had noticed Henderson starting to fall out of the corner of his eye. Prisk Decl. ¶ 8. Once Prisk saw what was happening, he focused his attention on Henderson. Id. ¶ 9.

---

[7] This fact was stipulated to by the parties. Final PTC Order, Admitted Fact 3.

15.   Prisk did not see what caused Henderson to fall or whether Henderson tripped over anything.  Prisk Decl. ¶ 10.

16.   After Henderson fell, Jacoby was called to the front of the store and arrived between 5 and 10 minutes later.  Jacoby Decl. ¶ 17.

17.   When Jacoby arrived, Henderson was still laying on top of the floor mats. Jacoby Decl. ¶ 18.  Because Henderson had been laying on top of the floor mats after she fell, the floor mats had not been moved or adjusted between when she fell and when Jacoby arrived.  Jacoby Decl. ¶ 18.

18.   Jacoby asked Henderson what had happened and Henderson indicated generally that she had fallen on one of the floor mats near the north exit, but she did not specifically indicate what part of the floor mat she tripped over.  Jacoby Decl. ¶ 20.

19.   Jacoby testified that it is unlikely that a customer exiting the Commissary through the north exit, like Henderson was, would walk over the area where the two floor mats met because customers must walk around the partition separating the exit from the cash registers in order to leave the Commissary.  Jacoby Decl. ¶ 34.

20.   In addition to speaking to Henderson and Prisk, and conducting his own examination of the floor mats, Jacoby took several pictures of the floor mats to record what they looked like at the time Henderson fell.  Jacoby Decl. ¶ 27.  This was Jacoby's standard practice based on his years of experience working in grocery stores.  Id.

21.   Exhibit 12 is a true and correct copy of a picture taken by Jacoby shortly after Henderson fell.  Jacoby Decl. ¶ 30.  It is the best view of these mats.  Trial Tr. (Henderson opening) at 8:21-22.  Exhibit 12 accurately depicts the Commissary exit and floor mats at the time Henderson fell.  Trial Tr. (Prisk) at 92:10-12; see Jacoby Decl. ¶ 18.

22.   At the time Henderson fell, she was standing on or near the lower left side of the photo, close to the left side of the exit door.  Trial Tr. (Prisk) at 92:10-23.  As Henderson was falling, Prisk was standing toward the middle of the mat, and the cart he was pushing was either halfway or all the way out the door.  Id. at 92:24-93:5.  Prisk

4

thinks he was just in front of the area where the small uplift in Exhibit 12 appears, id. at 93:6-11, which is consistent with his other testimony concerning his location.



EXHIBIT 12 - 1

23. Both parties disclosed expert witnesses to provide opinions regarding the size of the "raised area" between the two floor mats Henderson contends she tripped over.

24. Henderson's expert, Philip Rosescu, testified that based on his review of the photographs taken shortly after Henderson fell, the only hazardous condition of the floor

5

mats was a buckle in the leading edge of the top floor mat at the north exit to the Commissary. Trial Tr. (Rosescu) at 56:7-21. To the extent, Rosescu intended to opine that the cause of the fall had to be a condition of the floor mats, however, the Court rejects that opinion as not being within Rosescu's professed area of expertise. It is also contrary to the evidence.

25. Although the Court need not provide a detailed analysis of the expert testimony of either party because it has found Henderson did not walk over the portion of the floor mats with the buckle, and her own expert testified that the buckle was the only condition he was aware of that could have caused her to trip, Trial Tr. (Rosescu) at 56:11-14, the Court notes that Rosescu's testimony was not sufficient to support a judgment in her favor because (1) he did not take any measurements, (2) he did not examine an exemplar floor mat, (3) he did not "come up with" a specific measurement of the buckle, and (4) his estimate was based on Prisk's (and perhaps others') "best estimate" as to the thickness of the floormats. Id. at 51:7-20, 54:23-55:1, 65:12-66:17; Prisk Decl. ¶ 16.

26. Both parties retained medical experts to opine regarding Henderson's condition following her fall.

27. Although the Court need not provide a detailed analysis of the expert testimony of either party because it has found Henderson did not walk over the portion of the floor mats with the buckle, the Court found the testimony of the United States' expert William Hugo Dillin, M.D., a spine surgeon who has exclusively practiced spine surgery and spine medicine for the past 35 years, dkt. 58-5 (Dillin Decl.) ¶ 2, to be more persuasive than that of Henderson's expert, based on his qualifications and experience, his review of Henderson's medical records, including the various imaging studies of Henderson's back, and his examination of Henderson – as well as the testimony of Henderson herself. Id. ¶¶ 14-17, 20.

28. The Court finds any testimony by Henderson's medical expert, Mark Ganjianpour, M.D., that was contrary to the testimony of Dr. Dillin[8] was not sufficient to support Henderson's damage claim by a preponderance of the evidence.

## **CONCLUSIONS OF LAW**

29. This Court has subject matter jurisdiction pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671, et seq. Venue is proper under 28 U.S.C. § 1391.

30. In an action brought pursuant to the FTCA, the law of the place where the allegedly negligent act occurred governs the substantive law applied. 28 U.S.C. § 1346(b). California law applies because all acts or omissions alleged in Henderson's Complaint took place in California.

31. To establish a claim under the FTCA, the claim must arise from the negligent or wrongful act of a government employee acting within the scope of his or her employment "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b).

32. Under California law, store owners owe a duty to their patrons to exercise reasonable care in keeping reasonably safe the portions of the store open to customers. Ortega v. Kmart Corp., 26 Cal. 4th 1200, 1205 (2001).

33. But store owners are not the "insurer[s] of the visitor's personal safety," so the mere occurrence of an accident on their premises does not sufficiently establish negligence. Brooks v. Eugene Burger Mgmt. Corp., 215 Cal. App. 3d 1611, 1620 (2008).

34. "In order to establish liability on a negligence theory, a plaintiff must prove duty, breach, causation and damages. A plaintiff meets the causation element by showing that (1) the defendant's breach of its duty to exercise ordinary care was a

---

[8] Some of Dr. Ganjianpour's testimony was consistent with that of Dr. Dillin.

substantial factor in bringing about plaintiff's harm, and (2) there is no rule of law relieving the defendant of liability." Ortega, 26 Cal. 4th at 1205; see also Vaughn v. Montgomery Ward & Co., 95 Cal. App. 2d 553, 557 (1950) (reversing judgment in favor of store customer when customer failed to establish that store's aisles were unsafe "and that she fell because of that condition").

35.   "If the conduct which is claimed to have caused the injury had nothing at all to do with the injuries, it could not be said that the conduct was a factor, let alone a substantial factor, in the production of the injuries." Mitchell v. Gonzales, 54 Cal. 3d 1041, 1052 (1991) (quoting Doupnik v. Gen. Motors Corp., 225 Cal. App. 3d 849, 861 (1990)); see also Pope v. United States, No. 13-CV-05194-BLF, 2015 WL 1743462, at *4 (N.D. Cal. Apr. 16, 2015) (granting summary judgment for United States when plaintiff could not establish that she sustained "any damages as a result of defendant's conduct").

36.   Henderson bears the burden to prove her case by a preponderance of evidence. See In re Exxon Valdez, 270 F.3d 1215, 1232 (9th Cir. 2001) ("The standard of proof generally applied in federal civil cases is preponderance of evidence.").

37.   The evidence presented to the Court establishes that Henderson did not trip over the portion of the floor mats that was buckled. Therefore, Henderson has failed to meet her burden to demonstrate that the buckle in the floor mat was the cause-in-fact of her fall.  Because Henderson has not proven this element of her claim, the United States is entitled to judgment.

38.   Even if Henderson had proven liability, she failed to meet her burden as to damages.

## CONCLUSION

Judgment shall be entered in favor of the United States of America and against Ruby Henderson.

IT IS SO ORDERED.

DATED: January 4, 2021

*/s/ Dale S. Fischer*
Honorable Dale S. Fischer
UNITED STATES DISTRICT JUDGE